ESTATE OF OSTELLA CARRUTH, DECEASED, THOMAS R. HAMILTON, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57772. Filed July 18, 1957.

*E. Charles Eichenbaum, Esq.*, and *W. S. Miller, Jr., Esq.*, for the petitioner.

*J. C. Linge, Jr., Esq.*, for the respondent.

BRUCE, *Judge:* In the deficiency notice which was mailed March 24, 1955, the respondent determined a deficiency in the income tax of Ostella Carruth for the fiscal year ended January 31, 1950, in the amount of $1,143.02. Ostella Carruth died April 20, 1954. Thomas R. Hamilton is the duly appointed administrator of her estate. One of the adjustments made by the respondent is not in dispute. The following issues remain for decision: (1) Whether the amount of farm rents earned but unpaid prior to the death of L. H. Carruth on August 19, 1949, which were collected by the L. H. Carruth Estate Trust prior to January 1, 1950, are includible in the income of Ostella Carruth, beneficiary under said trust; (2) whether a reserve for repairs in the amount of $5,000 set aside by the trust before making actual distribution to the beneficiary, Ostella Carruth, should be allowed as a deduction in computing the amount distributable by the trust and taxable to the beneficiary; (3) whether a reserve for trustee's commission in the amount of $1,960.95 set aside by the trust before making actual distribution to the beneficiary should be allowed as a deduction in computing the amount distributable by the trust and taxable to the beneficiary.

On brief the respondent for the first time attempted to place in issue the depreciation deduction taken by the trust in computing distributable income. Since this issue was not pleaded it will not be considered by this Court. *Sicanoff Vegetable Oil Corporation*, 27 T. C. 1056.

The facts have been stipulated and they, together with the attached exhibits, are adopted as our findings of fact.

L. H. Carruth and Ostella Carruth were husband and wife. L. H. Carruth (hereinafter sometimes referred to as decedent) died testate August 19, 1949. For the fiscal year ended January 31, 1950, a joint Federal income tax return was filed in the name of L. H. Carruth, deceased, and Ostella Carruth, with the collector of internal revenue for the district of Arkansas. The income of L. H. Carruth, deceased, was reported on such return on a cash basis of accounting.

Prior to his death, L. H. Carruth owned farms which he had leased for the calendar year 1949 for cash consideration. The provisions of each lease agreement were similar in that the land was rented for the calendar year 1949 and a cash rent for same became due, in some cases, on October 15, 1949, and in others on November 1, 1949. In most instances promissory notes payable to the order of the dece-

dent and becoming due on the dates stated above were executed by the tenants to secure the rent.

The decedent's will, after providing for the payment of all expenses and taxes, provided as follows:

(3) I give, devise, and bequeath unto my wife, Ostella Carruth, as Trustee, and unto her successor, as hereinafter provided, the residue of my estate, real, personal, or mixed, wherever situated, subject to the payment by the Executrix of my estate, of any debts I may owe and the estate or inheritance tax which may be due to the Federal Government and the State of Arkansas; said Trustee (Original Trustee) is granted, and shall have the power and authority, without the approval of any Court, to:

Rent or lease or farm any and all lands, and collect the rents thereon; to make loans to any tenant or tenants for the purpose of producing crops on said lands, taking whatever securities that are available; to waive the rent lien on the crops of any tenant or tenants in order that said tenant may get furnished for farming said lands, if the Trustee considers that course best for the Trust; to borrow money for the payment of debts of the estate, the payment of the estate or inheritance taxes, to furnish money to the tenants for farming the lands, to repair the improvements on the lands, to build new improvements on the lands, to pay to the beneficiaries herein the annual allowance hereinafter provided, or for any other purpose necessary to the most successful operation of the Trust, and, if necessary, to mortgage or otherwise pledge any of the property in the Trust to secure the payment of any loan or loans that may be made to the Trustee. (I have full confidence in the business judgment of my wife, and I want to grant to her, as Trustee, the power and authority to do any act in managing the Trust property that I could do if then living).

Also to sell or exchange and convey any property in the Trust, and to reinvest the proceeds of such sale or sales, if she considers such action for the best interest of the Trust Estate, and any purchaser from her shall not be required to see to the application of the proceeds of any sale or sales.

(4) The annual net income, from the operation of the trust, during the lifetime of my wife, Ostella Carruth, shall be distributed annually within a reasonable time after January 1st, as follows:

To Ostella Carruth, my wife, 70%; to Mary Carruth Jones, my daughter, 30%, and in arriving at the net income, for distribution, the trustee will not be bound by the same rules of accounting which prevail for income tax purposes, changing conditions may make it necessary to make changes in capital assets, or to add on additional capital assets, or improvements, in order to obtain the maximum returns from the property. If the trustee deems it necessary to spend part of the income for what would normally be considered capital assets, then, said Trustee may consider these items as expenses in arriving at the net income for distribution.

\*          \*          \*          \*          \*          \*          \*

(7) It is my desire that my wife, Ostella Carruth, shall serve as Trustee for the duration of her life, and that she not be required to execute any sort of bond, as such, or be required to file any report in any Court, as such Trustee, and at her death, the title to the Trust property shall pass to the National Bank of Commerce of Memphis, Tennessee and Frank G. Barton, as Trustees in succession with the same powers and authority as granted to the original Trustee.

The Federal estate tax return filed for the estate of decedent was examined by the respondent and the respondent included in the gross

estate as an asset at date of death the farm rents hereinabove described totaling $19,860.25 and estate tax attributable thereto was paid in the amount of $2,475.77.

A fiduciary income tax return prepared according to the cash basis was filed for the L. H. Carruth Estate Trust for the calendar year 1949. On Schedule B of such return was reported $33,064 as farm rents received. Such amount included the $19,860.25 rents not paid to L. H. Carruth prior to his death but collected prior to January 1, 1950. In the fiduciary return filed by the trust for the year ended December 31, 1949, for the purpose of computing taxable net income, there was deducted from gross income the amount of $16,484.60 as income for distribution to the beneficiary, Ostella Carruth, which was reported as income from the trust on the return of L. H. Carruth, deceased, and Ostella Carruth. On January 10, 1952, the trust filed an amended fiduciary return for the year ended December 31, 1949. On Schedule B of such return was reported the amount of $31,776.40 as farm rents received. Such amount included the rents amounting to $19,860.25 not paid to L. H. Carruth prior to his death but collected prior to January 1, 1950. In the amended return filed by the trust there was deducted for the purpose of computing taxable net income, the amount of $18,591.75 as income for distribution to the beneficiary, Ostella Carruth.

On January 10, 1952, the trust filed with the collector of internal revenue for the district of Arkansas a claim for refund of taxes paid for the year ended December 31, 1949, in the amount of $4,551.01. Such claim for refund was examined by the respondent together with the original and amended income tax returns filed by the trust. On February 11, 1955, the claim for refund was allowed in full and a check was mailed to the trustee covering the full amount of the claim plus interest to February 11, 1955. In making the refund and allowing the claim for refund in full the respondent allowed the trust as a deduction from taxable income the amount of $18,591.75 for distributable income to the beneficiary, Ostella Carruth. The amount of this deduction exceeded that amount claimed in the original trust return by $2,107.15.

In accounting and making actual distribution to the beneficiary, Ostella Carruth, for the trust year ended December 31, 1949, the trustees of the trust computed trust income on the cash receipts and disbursements basis with the following exceptions:

Capital expenditures of $812.97 (not deducted in the trust's tax return) were charged as expense.

Depreciation of $1,863.50 (deducted in the trust's tax return) was not charged as an expense.

Certain reserves (not deducted in the trust's tax returns) were charged against income and designated as follows:

Reserve for Repairs_____ $5,000.00
Reserve for Trustee's Commission_____ 1,960.95

No estate or death taxes ($2,475.77 deducted in the trust's tax return) were charged as expense.

In accounting and making actual distribution to beneficiary Ostella Carruth for the trust year ended December 31, 1949, the trustee treated the $19,860.25 farm rents not paid to L. H. Carruth prior to his death but collected prior to January 1, 1950, as income of the trust rather than corpus of the trust.

In the original tax return of the trust for the year ended December 31, 1949, in computing income distributable to the beneficiary, Ostella Carruth, there was deducted an item designated "Reserve for Repairs" in the amount of $5,000, and in the return filed for L. H. Carruth, deceased, and Ostella Carruth for the fiscal year ended January 31, 1950, there was omitted from taxable net income the portion thereof distributable to Ostella Carruth under the terms of the L. H. Carruth will.

On December 17, 1956, in the case of *Thomas R. Hamilton, et al* v. *National Bank of Commerce, et al.*, Docket No. 12586, the Chancery Court of Crittenden County, Arkansas, entered a decision holding that the trustees have the authority to retain annually from the income of the trust a reasonable amount for contingencies for repairs and that it has not been alleged or shown that the amounts withheld are excessive or an unreasonable exercise of the power of the trustees in the judicious and prudent management of the trust estate.

In the original income tax return of the trust for the year ended December 31, 1949, in computing income distributable to the beneficiary, Ostella Carruth, there was deducted an item designated "Reserve for Trustee's Commission" in the amount of $1,960.95, and in the return filed for L. H. Carruth, deceased, and Ostella Carruth for the fiscal year ended January 31, 1950, there was omitted from taxable net income the portion thereof distributable to Ostella Carruth under the terms of the decedent's will. The item designated "Reserve for Trustee's Commission" in the amount of $1,960.95 referred to above, represented commission earned by the trustees by December 31, 1949, but not paid until after such date.

In the claim for refund and amended income tax return of the trust for the year ended December 31, 1949, income distributable to the beneficiary, Ostella Carruth, was not reduced by the amount of the reserves described above. However, there was deducted depreciation in the amount of $1,863.50, and in the return filed for L. H. Carruth,

deceased, and Ostella Carruth for the fiscal year ended January 31, 1950, there was omitted from taxable income the portion thereof distributable to Ostella Carruth under the terms of the trust and actually distributed to her by the trustee.

The trust erroneously reported net rental income in the amount of $1,065.22 in its original return filed for the taxable year ended December 31, 1949, and such item was erroneously omitted from net taxable income in the original return filed for L. H. Carruth, deceased, and Ostella Carruth for the fiscal year ended January 31, 1950; said amount was excluded from net income reported by the trust in its amended return filed for the year ended December 31, 1949, and its claim for refund and a like amount was included in computing the net income as set forth in the claim for refund filed for L. H. Carruth, deceased, and Ostella Carruth for the year ended January 31, 1950. The errors in the original return were due to the trust's erroneously including in income and the return filed for L. H. Carruth, deceased, and Ostella Carruth erroneously omitting from income the net rental income earned by property owned by L. H. Carruth.

In the original return filed for L. H. Carruth, deceased, and Ostella Carruth for the fiscal year ended January 31, 1950, there was erroneously included in net income rent payments received from the Estate of L. H. Carruth (not the trust) in the amount of $970.90.

With respect to the fiscal year ended January 31, 1950, a consent extending the period for assessment of taxes on the return filed for L. H. Carruth, deceased, and Ostella Carruth, to June 30, 1953, was timely executed.

On May 21, 1953, the duly appointed guardian of Ostella Carruth filed for L. H. Carruth, deceased, and Ostella Carruth a claim for refund of taxes paid for the fiscal year ended January 31, 1950, in the amount of $7,727.76, which respondent disallowed.

The trust, in its return filed for the year ended December 31, 1949, was allowed a deduction in the amount of $2,475.77 for estate tax paid due to the inclusion in the decedent's estate of the farm rents in the amount of $19,860.25.

The first issue for decision involves the farm rentals in the amount of $19,860.25, which constituted the pro rata portion of the annual rentals at the date of L. H. Carruth's death. Such rentals were unpaid at that date but were collected by the trust prior to January 1, 1950. It has been stipulated that this amount although unpaid was treated by the respondent as a part of the gross estate of the decedent for estate tax purposes. It is also agreed by the parties that such amount is includible in the gross income of the trust. It seems clear to us that such rentals were earned at the date of the decedent's death and consti-

tuted an asset of the decedent's estate. Respondent has not seriously contended otherwise. Thus the issue before us is whether income in respect of a decedent which is includible in the gross income of the trust under section 126 (a), Internal Revenue Code of 1939,[1] may, when distributable, be properly included in the gross income of the trust's distributee as a distribution of income under section 162 (b), Internal Revenue Code of 1939.[2] The principle involved was first decided by this Court in *Estate of Ralph R. Huesman*, 16 T. C. 656, affirmed on other grounds 198 F. 2d 133. In that case the estate received cash constituting the payment of a bonus owing to decedent at the time of his death. Under court order this cash was immediately paid over to the trustees who in turn paid it to a beneficiary (Loyola University) under the trust as a partial satisfaction of its legacy. The money was included in decedent's estate income tax return under section 126 and then deducted under section 162. We held that section 126 is a remedial provision enacted for the benefit of a decedent in connection with his final income tax return and relates to income earned by a decedent but not as yet received at the time of his death,[3] and that section 162 refers to income earned by an estate during its administration and does not apply to corpus of the estate which is treated as income merely because of section 126. Therefore, no deduction was allowable under section 162. In *Rose J. Linde*, 17 T. C. 584, modified

---

[1] SEC. 126. INCOME IN RESPECT OF DECEDENTS.
    (a) INCLUSION IN GROSS INCOME.—
        (1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:
        (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
        (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
        (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.
[2] SEC. 162. NET INCOME.
The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—
    *        *        *        *        *        *        *
    (b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;
[3] See H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C. B. 435; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C. B. 579.

on other grounds 213 F. 2d 1, certiorari denied 348 U. S. 871, the issue involved was similar to the one in the instant case. In the *Linde* case the taxpayer was the sole beneficiary of the decedent's estate. The issue as stated there was whether the proceeds from the liquidation of wine pools and other amounts which were owing the decedent when he died and which were received by the estate and distributed by it to the taxpayer were taxable to the taxpayer under section 126. In arriving at a decision on this issue, after setting out the pertinent portion of section 126 and the regulations thereunder, we stated, *inter alia*, as follows (at pp. 592–593) :

Nowhere in the above-quoted sections of the Code and Regulations is provision made for taxing section 126 income to any person other than the rightful recipient, or to a distributee where an estate receives such income and currently distributes it.

Respondent apparently relied on the provisions of section 162 (c) as authority to tax section 126 income to petitioner. The applicability of section 162 [footnote 1 omitted] to a situation where section 126 income was received by an estate and currently distributed to a beneficiary was recently before this Court in the *Estate of Ralph R. Huesman*, 16 T. C. 656. In that case taxpayer-estate in its income tax return reported the receipt of section 126 income. The amount of such income was immediately distributed to the beneficiary under a testamentary trust set up in accordance with the provisions of the decedent's will. We held that the taxpayer-estate was not entitled to a section 162 deduction for the amount of section 126 income paid over to the beneficiary, since such section 126 income was not income of the estate but rather its corpus, a claim of the estate which collection reduced to cash, and the distribution of section 126 income was a distribution of corpus. Relying on that case we hold that petitioner is not taxable on any amounts of section 126 income which may have been received by the decedent's estate and distributed to her in 1944.

These cases are apposite and controlling on the issue confronting us in the instant case and we hold that such rentals are not to be considered in computing the net income of Ostella Carruth. Moreover to hold otherwise, it seems, would allow the trust a double deduction in connection with such rentals since apparently a separate deduction could also be claimed under section 126 (c),[4] as was done in this case. We find nothing in these provisions to indicate that Congress intended such a result. Our position is strengthened by the committee report issued with respect to the treatment of this problem under the Internal Revenue Code of 1954, which is as follows:

---

[4] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a) (1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).

Under existing law items of income in respect of a decedent distributed by an estate or trust are ordinarily not includible in gross income of the beneficiary, because such items represent "corpus" as distinguished from "income" in the hands of the estate or trust. * * * [S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 375.]

Respondent has relied upon *Clymer's Estate* v. *Commissioner*, 221 F. 2d 680, reversing T. C. Memo 1954–112, as authority for his position. Apparently the Court of Appeals did not consider this question of a double deduction material in the *Clymer* case, since, under its decision allowing deduction for the entire amount claimed under section 162 (a) there was nothing left upon which a deduction under section 126 (c) could operate. We have thoroughly reconsidered the problem in the light of that decision and have concluded that we must respectfully decline to follow it to the extent that our holding herein is not in accordance with the ruling in that case.

The next issue involves the $5,000 which the trustees had set aside as a reserve for repairs. In the original return filed by the fiduciary, this amount was deducted when computing the amount of income distributable to the beneficiary. In the amended trust return, when computing the amount of income available for distribution to the beneficiary, no allowance was made for the $5,000 reserve and accordingly 70 per cent thereof was treated as income distributable to Ostella Carruth. The petitioner contends that such amount was not distributable to Ostella Carruth and accordingly such should not be included in her gross income.

The question of whether trust income is distributable depends upon the trust instrument. The test of taxability to the beneficiary is the present right to receive income. *Freuler* v. *Helvering*, 291 U. S. 35. Where there is an adversary proceeding before a State court of competent jurisdiction in which a question involving rights under a trust is decided on its merits and no collusion is shown to have existed with regard thereto, such decision upon the property rights litigated before it is binding upon us. *Eva V. Townsend*, 5 T. C. 1380. In the instant case the decedent's will provided that the trustees were given the authority to do any act in managing the trust property that he (the decedent) could do if living. The will also provided that "the trustee will not be bound by the same rules of accounting which prevail for income tax purposes * * *." Acting under these powers the trustees set up an account characterized as "Reserve for Repairs" and credited thereto the amount of $5,000. The petitioner took the position that the trustees were not entitled to withhold the $5,000 reserve and filed suit in the State Chancery Court in an adversary proceeding to test the issue. On December 17, 1956, the Chancery Court of Crittenden

County, Arkansas, entered a decree finding that the trustees do have the power to withhold the reserve for repairs in issue. We therefore hold that Ostella Carruth had no present right to receive any amount of such $5,000 and accordingly such amount is not includible in her gross income during the period in issue.

The next issue involves the reserve for trustee's commission. In the trust's original return for 1949 the trustee deducted from gross income the amount of $1,960.95, designating such amount as "Reserve for Trustee's Commission." Such amount was treated as a deduction in determining the amount of the trust's income currently distributable to the beneficiaries and such amount was withheld from distribution. In the amended trust return no deduction for such reserve was claimed and distributable income was not reduced by such reserve. The amount of such reserve represented trustee's commission which was earned but unpaid at the end of the trust's taxable year, December 31, 1949.

The petitioner's contention is much the same as that relied upon in the previous issue, i. e., the trustees had the right to withhold the funds, therefore they were not available to Ostella Carruth and accordingly should not be included in her gross income. The respondent argues that the trustees were without authority to accumulate funds and therefore such reserve was distributable and 70 per cent thereof was includible in the gross income of Ostella Carruth. The respondent's contention cannot be sustained. In his will, the decedent gave very broad powers to the trustees. We have no doubt that acting under these powers the trustees had the right to set aside for trustee's commission, especially where the reserve represented the amount of trustee's commission which had been earned but remained unpaid. Under these facts we hold that Ostella Carruth had no present right to receive such disputed amount and accordingly no portion thereof is includible in her gross income during the period in issue. *Freuler* v. *Helvering*, *supra*. *Frick* v. *Driscoll*, 129 F. 2d 148, relied upon by respondent is distinguishable on its facts.

It is not necessary that we decide whether respondent's proposed assessment of a deficiency is barred by the statute of limitations since the additions to gross income upon which respondent's determination is based are more than offset by the deletions from gross income resulting from our holding with respect to the other issues involved. Accordingly, there is no deficiency. However, in computing overpayment under Rule 50, allowance must be made for respondent's uncontested adjustment. See *Lewis* v. *Reynolds*, 284 U. S. 281.

*Decision will be entered under Rule 50.*