The MIDLAND NATIONAL BANK OF BILLINGS, a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 138.

United States District Court
D. Montana,
Billings Division.

Jan. 2, 1959.

Cooke, Moulton, Bellingham & Longo, Billings, Mont., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Lyle M. Turner, Benjamin H. Pester, James P. Saunders, Dept. of Justice, Washington, D. C., Krest Cyr, U. S. Atty., Butte, Montana, for defendant.

JAMESON, District Judge.

Plaintiff is executor of the estate of John H. Garberson, who died on August 8, 1950. The decedent was a physician and among the assets of his estate were accounts receivable which were determined to have a fair market value of $65,000 for federal estate tax purposes. For the fiscal period ending July 31, 1951, receivables in the net amount of $66,807.73 were collected; and for the fiscal year ending July 31, 1952, the net amount of $8,632.03 was collected and distributed to the beneficiaries named in the will.

On March 26, 1954, plaintiff, as executor, filed a delinquent fiduciary income tax return for the fiscal year ending July 31, 1952. The amount of $8,632.03 collected from the accounts receivable was included as income pursuant to section 126(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 126(a) (1).[1]

By reason of the distribution to the beneficiaries, a deduction was claimed under section 162, 26 U.S.C.A. § 162.[2]

---

1. "§ 126. Income in respect of decedents
   "(a) Inclusion in gross income.
   "(1) General rule. The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:
   "(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
   \* \* \* \* \*
   "(3) Character of income determined by reference to decedent. The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent \* \* \* as if it had been acquired by the estate \* \* \* in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) \* \* \* shall be considered in the hands of the estate \* \* \* to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount." Added October 21, 1942, c. 619, Title 1, § 134(e), 56 Stat. 831.

2. "§ 162. Net income
   "The net income of the estate \* \* \* shall be computed in the same manner and on the same basis as in the case of an individual, except that—
   "(a) \* \* \* there shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o)) any part of the gross income, without limitation, which pursuant to the terms of the will \* \* \* creating the trust, is during the taxable year paid \* \* \* for \* \* charitable \* \* \* purposes \* \* \*.
   "(b) There shall be allowed as an additional deduction in computing the net income of the estate \* \* \* the amount of the income of the estate \* \* \* for its taxable year which is to be distributed currently by the fiduciary \* \* but the amount so allowed as a deduction shall be included in computing the net income of the legatees \* \* \* '(I)ncome which is to be distributed currently' includes income for the taxable year of the estate \* \* \* which, within the taxable year, becomes payable to the legatee \* \* \*
   "(c) In the case of income received by estates of deceased persons during the period of administration or settle-

The District Director determined that the deduction was not available and set the deficiency in the amount of $2,139.84, a delinquency penalty of $534.96, and interest in the amount of $550.92, or a total of $3,225.72, which was paid by plaintiff on March 25, 1957. Plaintiff filed a claim for refund and, upon disallowance thereof, commenced the present action.

■ The parties agree that the accounts receivable were taxable income under section 126(a) (1). The only question to be determined is whether the collections on the accounts receivable constituted income under section 162(c).

Prior to 1934, income which had accrued but had not been received upon a cash basis taxpayer's death, escaped income tax altogether because it was not taxable to his estate. Helvering v. Enright's Estate, 1941, 312 U.S. 636, 61 S. Ct. 777, 85 L.Ed. 1093. This situation led to the enactment of Section 42 of the Revenue Act of May 10, 1934, 26 U.S. C.A. § 42, which provided that there be included in computing the net income for the taxable year in which a taxpayer died, amounts accrued up to the date of his death. This, however, resulted in a "bunching" of income, thereby forcing the estate into a higher tax bracket, whereas, had the decedent lived, the income would have been distributed over a number of years. Section 126, enacted in 1942, was designed, in part, to relieve this bunching and was intended to be "an improved device to accomplish the general purpose of the internal revenue code that all income should pay a tax and that death should not rob the United States of the revenue which otherwise it would have had." Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, 5, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686.[3]

It is the contention of defendant that section 162 relates to income *earned* by an estate during its administration and does not apply to items which are income merely because of section 126; that section 126 income "is really part of the corpus of an estate and is therefore includible in the gross estate for estate tax purposes." This position has been upheld by the tax court in Estate of Ralph R. Huesman, 1951, 16 T.C. 656; Rose J. Linde, 1951, 17 T.C. 584 and Estate of Ostella Carruth, 1957, 28 T.C. 871.

The Huesman and Linde cases were both appealed to the Court of Appeals for the Ninth Circuit, but in neither case did the Court of Appeals pass on the precise question here involved. Huesman's Estate v. Commissioner of Internal Revenue, 9 Cir., 1952, 198 F.2d 133; Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686.

The plaintiff contends that since the accounts receivable are recognized as taxable income under section 126, they should also be considered income under section 162, which can be deducted when distributed currently to the beneficiaries. This position finds support in Clymer's Estate v. Commissioner of Internal Revenue, 3 Cir., 1955, 221 F.2d 680, 682, although in both the Huesman and Clymer cases the court was concerned with the application of section 162(a) rather than

---

ment of the estate * * * there shall be allowed as an additional deduction in computing the net income of the estate * * * the amount of the income of the estate * * * for its taxable year, which is properly paid or credited during such year to any legatee * * * but the amount so allowed as a deduction shall be included in computing the net income of the legatee * * *"

3. The Court went on to say: "We think it clear that the intent of Congress continued to be * * * 'to cover into income the assets of decedents, earned during their life and unreported as income'. As stated in the Committee reports, 'The right to income is treated in the hands of the decedent differently from his other property, and when his estate or his legatee takes his place with respect to this income, it is proper to continue to treat this right in their hands in the same manner as it would be treated in the hands of the decedent.'" 213 F.2d at page 5.

162(c). In the Clymer case the court said in part:

" * * * 'Gross income', as used in the Internal Revenue Code of 1939, is defined in section 22 of the Code. It is the base upon which taxable net income is computed. Accordingly when section 162(a) refers to the 'gross income' of an estate it must be held, in the absence of a special exclusionary provision, to include all items which are a part of the 'gross income' of the estate including those which are made a part of 'gross income' by the express mandate of section 126(a). * * "

"The respondent argues to the contrary that the income referred to in section 162(a) is only such income as is earned by the estate during administration and does not include what under state property law would be regarded as corpus of the estate. A sufficient answer to this argument is that in using the phrase 'gross income' the sections of the Code in question are applying a federal criterion, the concept of income embodied in section 22, and are not referring to state law notions of corpus and income. * * * ".4

■ The decisions of the Court of Appeals of the Ninth Circuit are binding on this court. Accordingly, it is necessary to determine the effect of those decisions, and particularly Huesman's Estate v. Commissioner, upon the precise question here presented.

The decision of the Tax Court and the contentions of the respective parties in their briefs in the Court of Appeals all shed some light on the significance of the opinion in Huesman's Estate v. Commissioner. In that case the residue of decedent's estate was devised and bequeathed to trustees, who were directed to distribute the trust property in various amounts and percentages, including 5% of the balance to Loyola University of Los Angeles. The sum of $80,517 was paid to the executors as a bonus. On the date the bonus was paid the executors paid the full amount to the trustees, and the trustees in turn paid the full amount to Loyola University. The amount was included in the estate income tax return under section 126, and then deducted under section 162(a).

The Tax Court held squarely that "section 126 is a remedial provision enacted for the benefit of a decedent in connection with his final income tax return, and relates to income earned by a decedent but not as yet received at the time of his death; while section 162 refers to income earned by an estate during its administration, and does not apply to items which are income merely because of section 126. Therefore, the deduction, under section 162, was incorrect." Syllabus by court, 16 T.C. 656.

In the Court of Appeals the Commissioner contended, first, that the Tax Court was correct in this conclusion; and second, that any deduction under section 162(a) would be limited to the share of income to which the distributee was entitled under the terms of the will; that legatees of given percentages take proportionately of both corpus and income; that an item of gross income may not be applied in its entirety as such in partial satisfaction of a residuary legacy of a small portion of the residuum; and that Congress "did not intend that the executors or trustees be permitted, absent provision in the will, to distribute income to some residuary legatee in payment of his legacy and make him subject to income tax thereon, while distributing the corpus to another and relieving him of all income tax thereon." Appellee's brief, pp. 15, 17.

---

4. In Clymer's Estate v. Commissioner, the court referred specifically to the decisions of the Ninth Circuit in Huesman's Estate v. Commissioner and Commissioner of Internal Revenue v. Linde, taking the position that "in neither did the Court of Appeals pass on this precise question," and that "the cases, therefore, are not authority for the decision of the Tax Court here under review." 221 F.2d at page 683.

The Court of Appeals did not consider the first ground and affirmed, in substance, on the second ground. Having so concluded, the Court found "it unnecessary to decide, as did the Tax Court, that § 126 income can in no instance be available for distribution under § 162." The Court said in part: "We understand the term 'paid pursuant to the terms of the will' in § 162(a) to mean that the charity must be denominated an income beneficiary in the instrument or, at least must receive a right to be paid income by virtue of the gift made to it  *  *  *. In the present case the will makes a gift to the charity of 5% of the residue less certain other gifts; the charity is a residuary legatee. In terms there is no gift of income made to the charity; the gift is one of corpus  *  *  *."

"The charity's right to be paid corpus was not a right to be paid a particular asset which constituted a portion of the corpus. The will gives no right to the charity to have its gift paid out of the proceeds of a particular asset. No asset or its proceeds was earmarked for the charity and we fail to find in the will authorization for the executors to do so  *  *  *. The charity received the money solely by reason of its right to share in proceeds of the corpus and not in satisfaction of a right to that portion of a corpus which might also be said to qualify as gross income under § 162(a). In other words, the sum in question was paid to the charity as and for corpus and not because the charity's admitted right to corpus gave it a right to this particular item as such. This negatives the idea that the payment was  ' *  *  * pursuant to the terms of the will  *  *' under § 162(a)." 198 F.2d 133, 136.

While counsel for defendant discuss at length the decision of the Tax Court in the Huesman case, with reference to the decision of the Court of Appeals they simply argue that "the facts in the Huesman case are not materially different from the ones in the case at bar, and hence the decisions of both the Tax Court and the Ninth Circuit in that case directly support the instant decision."

In my opinion, however, the factual situation is quite different.[5] Here, distribution was made to the legatees in the proportions set forth in the will. No attempt was made to ear-mark a particular asset or receipt for a particular legatee. Moreover, the clause in section 162(a), "any part of the gross income, without limitation, which pursuant to the terms of the will  *  *  *", does not appear in section 162(c).[6] We are concerned with the application of the language used by the Court of Appeals to the facts in this case. I cannot overlook the fact that it would have been very simple for the Court of Appeals to affirm the conclusion of the Tax Court that section 162 does not "apply to items which are income merely because of section 126." Instead, the Court of Appeals expressly called attention to the fact that it was unnecessary to decide, "as did the Tax Court, that § 126 income can in no instance be available for distribution under § 162."

In Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, 7, the Court of Appeals did not pass upon the question here presented, since the holding of the Tax Court that the beneficiary of the estate of the decedent was not taxable on any amount of section 126 income was not challenged by either party in the appellate court.[7]

5. It is noted that the Tax Court in Estate of Carruth, 28 T.C. 871, in referring to the Huesman case said: "The principle involved was first decided by this court in Estate of Ralph R. Huesman, 16 T.C. 656  *  *  *, affirmed on other grounds, 198 F.2d 133  *  *  *."

6. In considering the phrase "pursuant to the terms of the will" it appears to me that there is a conflict between the

Huesman and Clymer cases, but the cases are distinguishable on the facts, since under decedent's will in Clymer's estate, the entire residue was bequeathed to a trustee for the charity in question, to pay $1,000 yearly, plus interest earned during the previous year.

7. While it is recited in this case that the Tax Court relied upon the decision

Accounts receivable of a decedent are of course a part of the corpus of his estate for *estate tax* purposes. Under section 126(a)(1) any collections on the accounts receivable by the estate are also included in the "*gross income * * ** (of) the estate of the decedent," and under section 126(a)(3) are "treated as income" in the hands of the estate and considered "to have the character" which they "would have had in the hands of the decedent if the decedent had lived" and received the payments himself.

Section 162(c) provides that "income received by estates of deceased persons during the period of administration" may be deducted in computing the net income of the estate if paid to the legatee during the year. There is nothing in the language of section 162(c) which evidences an intent by Congress to except section 126 income from its provisions. Accordingly, it is my opinion that an item which is "gross income" in section 126(a)(1) must also be "income *received* by estates of deceased persons during the period of administration" under section 162(c) even though that income was earned prior to decedent's death.[8] This is true even though there may be some merit in defendant's contentions that to allow deductions under section 162 for section 126 income is not compatible with the "statutory scheme", and that under certain circumstances a double deduction may result from allowing deductions under both section 126(c) and section 162.[9] I do not find section 162(c) so limited to income "*earned*" by an estate during its administration since it specifically says "income *received*" by estates.[10]

Under the 1954 Internal Revenue Code, the deduction claimed by plaintiff would be allowed (26 U.S.C.A. § 661). Plaintiff argues that this manifests a Congressional intent "in the drafting of the former amendments of Sec. 162 of the Internal Revenue Code of 1939." Defendant refers to the committee report on the Internal Revenue Code of 1954, which contains this statement:

> "Under existing law items of income in respect of a decedent distributed by an estate or trust are ordinarily not includible in gross income of the beneficiary, because such items represent 'corpus' as distinguished from 'income' in the hands of the estate of trust. * * (S.Rep.No. 1622, 83d Cong.2d Sess. (1954), p. 375.)" U.S.Code Congressional and Administrative News 1954, p. 5016.

Neither party cites any committee report in 1939 or 1942 in support of its position. I do not believe the committee report in 1954 could be construed to manifest the intent of Congress in the enactment of the 1939 Internal Revenue Code or amendments thereto. It is simply a recognition by Congress of the construction

---

of the Ninth Circuit in Huesman's Estate v. Commissioner, 198 F.2d 133, this was apparently in error, as the opinion of the Tax Court in the Linde case was promulgated prior to the decision of the Ninth Circuit in the Huesman case. The Linde opinion does rely upon the Huesman opinion of the Tax Court.

8. The Supreme Court has said, "In the absence of express restriction it may be assumed that a term is used throughout a statute in the same sense in which it is first defined." Pampanga Sugar Mills v. Trinidad, 1929, 279 U.S. 211, 218, 49 S.Ct. 308, 310, 73 L.Ed. 665, 668.

9. With respect to the "double deduction", it is worthy of note that any amount allowed as a deduction under section 162(c) is to be "included in computing the net income of the legatee." It is significant also that the 1954 Code expressly permits both deductions—Int. Rev.Code of 1954, §§ 661, 691(c), 26 U.S. C.A. §§ 661, 691(c).

10. Section 126 was enacted on October 21, 1942. (c. 619, Title I, § 134(e), 56 Stat. 831). In the same Act Congress amended subsection (b) of section 162. C. 619, Title I, § 111(b), 56 Stat. 809. Thus, it does not appear that Congress overlooked or did not consider section 162 at the time section 126 was enacted. Had Congress intended that section 162 (c) not be applicable to section 126 income, it could have expressly so provided or limited the application of section 162 to income *earned* by the estate.

placed upon this provision in the 1939 Code by the Commissioner and upheld by the Tax Court. It manifests an intent of Congress in 1954 to change this construction and clarify the 1942 Act.

Judgment will be entered for plaintiff. Plaintiff will prepare, serve and file draft of judgment pursuant to Rule 11(b) of the Rules of Procedure of the United States District Court for the District of Montana.