William Edgar Close v. Commissioner.
Close v. Commissioner
Docket No. 63304.
United States Tax Court
T.C. Memo 1959-71; 1959 Tax Ct. Memo LEXIS 177; 18 T.C.M. (CCH) 348; T.C.M. (RIA) 59071; April 14, 1959
*177 Kenneth Cleaver, Esq., 2120 Colorado Boulevard, Los Angeles, Calif., for the petitioner. Eugene F. Reardon, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined the following deficiencies in income taxes and additions to tax: Additions to Tax,
I.R.C. 1939
Sec.
Sec. 294
Sec. 294
Year
Deficiency
293(b)
(d)(1)(A)
(d)(2)
1947
$ 486.07
$ 243.03
$ 52.78
$ 35.18
1948
650.19
325.09
76.90
51.25
1949
4,825.57
2,412.78
563.83
375.87
1950
3,903.62
1,951.81
419.62
279.75
$9,865.45
$4,932.71
$1,113.13
$742.05
The issues are: 1. Whether part of the deficiency for each of the years 1947, 1948, 1949 and 1950 was due to fraud with intent to evade tax. 2. Whether petitioner is liable for the additions to tax provided for in Section 294(d)(2) for making substantial underestimate of estimated tax. 3. Whether petitioner sustained deductible losses from gambling in the amount of $287.70 in the year 1947 and in the amount of $199 in the year 1950. 4. Whether petitioner is entitled to a deduction for child support in the amount of $900 for the year 1950. *178 The petitioner concedes that he is liable for the additions to tax provided for in Section 294(d)(1)(A) for failure to file declarations of estimated tax for each of the years 1947 through 1950. Petitioner does not contest the basic deficiencies determined by the Commissioner except as they are affected by issues 3 and 4. Findings of Fact A stipulation of facts filed by the parties is incorporated herein by reference. Petitioner, a resident of Glendale, California, filed his income tax returns for the taxable years with the then collector of internal revenue for the sixth district of California. Petitioner has been in the coffee business since 1915. During the taxable years he was employed as the manager of the coffee and manufacturing division of the Smart & Final Company of Glendale, California (hereinafter sometimes referred to as Smart & Final), a corporation engaged in the wholesale grocery business. Its activities, among others, included the purchase of green coffee for roasting and the sale of the roasted coffee to its customers. At times during the taxable years Smart & Final had green coffee in excess of its requirements and would sell this excess coffee. Petitioner *179 handled such sales for the company. During the years 1947 through 1950 William J. Morton was a green coffee broker engaged in the business of buying various types of green coffee and selling it to coffee roasters in the Los Angeles area. Prior to November 1949 Morton engaged in this business as an individual. In November 1949 the business was incorporated and became W. J. Morton, Inc. (As used hereinafter the name "Morton" will be used to refer to William J. Morton individually, or to his corporation, or to William J. Morton acting for his corporation.) Petitioner, acting as agent for Smart & Final, had sold green coffee to Morton prior to 1947. During the years 1947 through 1950 coffee was in short supply and there was an upward swing in the market. Early in 1947, at the suggestion of petitioner, he and Morton entered into an oral agreement the substance of which was that petitioner, acting as agent for Smart & Final, would sell green coffee to Morton and thereupon petitioner and Morton would share equally any profits or losses resulting from the resale of that coffee by Morton. Morton shared the profit on resale with petitioner because petitioner was selling the coffee to him *180 at a price which was from one-quarter to one-half cent per pound lower than Morton could purchase it elsewhere. Neither petitioner nor Morton told Smart & Final about their profit-sharing agreement. During the years 1947 through 1950 petitioner, acting as agent for Smart & Final, made a number of sales of green coffee to Morton. Morton paid Smart & Final for this coffee. When Morton sold the coffee he realized a profit on every sale. In accordance with the oral agreement he divided the profit realized with petitioner. The amount received by petitioner as his share of the profit on the coffee transactions with Morton during the taxable years was as follows: Year
Amount
1947
$ 1,417.79
1948
1,478.52
1949
9,950.00
1950
10,171.70 Petitioner received from Morton checks during each of the years as his share of the profits. During the years 1947 and 1948 petitioner and Morton discussed the profit realized on coffee transactions, and Morton, who kept records showing the profit on each transaction, told petitioner the specific amounts he was reporting as profit on these transactions in his income tax returns for 1947 and 1948. These amounts represented 50 per cent *181 of the profit. Petitioner did not report the amounts he received from Morton as his share of the profits for 1947 and 1948 in his income tax returns for those years. Subsequent to 1948 petitioner and Morton had a conversation with respect to the manner in which any profits realized during the years 1949 and 1950 would be reported, and Morton told petitioner that he would include the full amount of any profits realized during those years in his (Morton's) income tax returns. From and after November 1949, when W. T. Morton, Inc. was incorporated, all of the profits on the coffee transactions, including petitioner's share, were reported in the income tax returns of W. T. Morton, Inc. Petitioner did not report his share of the profits in his income tax returns for 1949 and 1950. He did not know whether Morton realized a profit or sustained a loss from his business during the years 1949 and 1950. Morton did not list the payments to petitioner on his books during these years. He knew that petitioner was an employee of Smart & Final and did not want his returns to show the large payments made to petitioner in 1949 and 1950. He was trying to do petitioner a favor by handling the payments *182 in this manner. He never told petitioner that he would pay any of his personal income taxes for 1949 and 1950. In the spring of 1951, after the time for filing 1950 returns had expired, petitioner was in Morton's office and had a conversation with an accountant employed by Morton with reference to the profits from the coffee transactions reported by W. T. Morton, Inc. for the years 1949 and 1950. The accountant told petitioner that notwithstanding the fact that the profits had been reported by the corporation, petitioner as the recipient of one-half of the profits should have reported them. Petitioner never filed any amended returns reporting the share of profits from the coffee transactions which he received from Morton during the taxable years. Petitioner engaged in profit-sharing transactions with at least one other person, W. H. Kunz, during 1949 and 1950. He reported the share of profits received from Kunz on coffee transactions in his income tax returns. He reported income in the amount of $4,631.87 received from Kunz during the year 1950. During that year he received from Kunz income in the amount of $6,204.87. The amount of $1,573, which he did not report in his 1950 return, *183 represented profit which he realized in that year from a joint venture with Kunz involving the purchase and sale of some coffee roasting equipment. When petitioner filed his income tax return for each of the years 1947 through 1950, he knew that he was required to report his income from commissions or profits on transactions with Morton and Kunz and that he had understated his income in his returns for those years. Part of the deficiency for each of the years 1947 through 1950 is due to fraud with intent to evade tax. Petitioner did not file any declarations of estimated tax for the years 1947 to 1950, inclusive. Petitioner had unreported income from gambling gains in the amount of $287.70 for 1947 and $199 for 1950. However, his losses from gambling in each of those years exceeded his gains in each such year, respectively. Petitioner and his wife were divorced in 1949. He was ordered by a decree of the Superior Court of the County of Los Angeles, State of California, to pay $75 per month during the years 1949 and 1950 for the support of his daughter, Kathryn LaVerne Close. Petitioner made these payments. In his returns for the years 1949 and 1950, he claimed deductions for *184 child support in the amount of $1,400 for 1949 and $900 for 1950. These deductions were disallowed by the respondent. Opinion RAUM, Judge: 1. The principal issue is whether part of the deficiency determined by the respondent for each of the taxable years 1947 through 1950 was due to fraud with intent to evade tax. The burden of proving fraud by clear and convincing evidence is on the respondent. In each of the years 1947 through 1950 petitioner received from Morton a share of the profits on sales of green coffee and in 1950 he received from Kunz a share of the profits realized from the sale of some coffee roasting equipment. This income was not reported by petitioner in his income tax returns. Petitioner testified that he knew he was required to report the income he received on the profit-sharing transactions. He stated that he did not report the profits received from Morton during 1947 and 1948 because he inadvertently overlooked and just forgot this income when he filed his returns for these years. He stated that he did not report the profits received from Morton during 1949 and 1950 because he had an agreement with Morton that Morton was to pay his taxes on these profits, *185 and he did not believe the Government was going to lose since he thought Morton was in a very high tax bracket and felt the Government would be better off if it received the taxes on the profits from Morton rather than from him. He also stated on cross-examination that Morton never told him how Morton was going to pay his taxes; that he never ascertained whether Morton realized a net profit or sustained a net loss from his business in 1949 and 1950; and that he did not know whether Morton ever paid any taxes for him during those years. Morton testified that he had discussions with petitioner as to how he (Morton) was reporting the profits from the coffee sales on his income tax returns for 1947 and 1948; that he told petitioner his share of the profits on the 1947 and 1948 transactions; and that he also told petitioner the specific amounts he (Morton) was reporting, which amounts represented 50 per cent of the profits. Morton also testified that he conversed with petitioner with reference to the 1949 and 1950 profits on the coffee transactions; that he told petitioner that if there were profits in these years he (Morton) would include the entire amounts of such profits in his returns *186 for those years; that he was trying to do the petitioner a favor by handling the profits in this way because petitioner was an employee of Smart & Final and he did not "like to report all this income being paid to" petitioner. Morton stated that he never told petitioner that he would pay any of his (petitioner's) taxes for 1949 or 1950, and that he did not receive any statement from petitioner as to petitioner's taxes and did not know what they were. Morton also stated that in the spring of 1951, after the time for filing 1950 returns had expired, petitioner, in a conversation with Morton's accountant in Morton's office, was informed by the accountant that as the recipient of 50 per cent of the profits he should have reported them notwithstanding their inclusion in the income of W. T. Morton, Inc.
When petitioner's attention was called to two checks he received from Kunz, one dated May 19, 1950, in the amount of $500 and the other dated September 13, 1950, in the amount of $1,073, he testified that these amounts represented a loan and introduced a note purportedly evidencing such a loan. That loan from Kunz was repaid in full on October 31, 1949, whereas the checks were received *187 in 1950. Petitioner subsequently admitted that these checks represented his share of the profit in a joint venture with Kunz involving the sale of some coffee-roasting machines. This profit was not reported in his income tax return for 1950. Petitioner impressed this Court as being an intelligent person. He reported net income of $7,680 for 1947 and $10,083.50 for 1948. In each of those years his share of profits received from Morton on the coffee transactions amounted to approximately $1,500. At the end of each of these years Morton informed petitioner of the amount he had received as his share of the profits and the amount he (Morton) was reporting as his share of the profits. We do not believe that after receiving this information a person of petitioner's intelligence could inadvertently overlook and just forget when he made out his returns for 1947 and 1948 that he had received income of about $1,500 in both of these years. In 1949 and 1950 he reported net income of $12,152 and $7,169.31, and failed to report income of $9,950 and $10,171.70 received from Morton. As to these years he makes no contention that he overlooked the income received from Morton when he made out his returns. *188 He says he did not report this income because Morton told him that he would pay his taxes on that income. We are convinced that Morton told him that he was going to report all of the income from the coffee transactions, including petitioner's share, in his (Morton's) returns for 1949 and 1950, and that Morton did not tell petitioner that he was going to pay petitioner's taxes on his share of that income. Petitioner would have us believe that he thought that the inclusion of his share of the income in Morton's returns relieved him of reporting the share he actually received because the Government would realize more taxes if Morton reported it. It is apparent, however, that he did not know and did not attempt to ascertain whether the inclusion of his share of the profits in Morton's returns would result in the realization of more taxes by the Government. The evidence convinces us that petitioner did not really believe that the inclusion of income he actually received in the return of another taxpayer would relieve him of the necessity of reporting and paying tax on that income. Moreover, if he ever entertained such a belief it should have been dispelled when Morton's accountant told *189 him early in 1951 that as the recipient of profits on the coffee transactions he should have reported them in his returns. He could then have filed amended returns reporting this income, but he chose not to do so. He acquiesced in the plan whereby his income from the coffee transactions was to be reported as income of Morton or W. T. Morton, Inc. While the objective of this plan may have been only to deceive Smart & Final, it also had the effect of deceiving the taxing authorities. In discussing a somewhat similar situation in Sam D. Hecht, 16 T.C. 981, 987, this Court said: "But when he had those others report his income as if it were theirs, and when he and his wife failed to report the income which they knew was theirs, they were deliberately falsifying their own returns and they were deliberately attempting to deceive the representatives of the government who would receive and examine those returns. * * *" Cf. United States v. Johnson, 319 U.S. 503. Petitioner knew that he was required to report in his income tax returns the income he received from profit-sharing transactions and for four consecutive years he failed to report such income. The consistent *190 understatement in successive years of substantial amounts of income, in such circumstances as are present here, is persuasive evidence of a fraudulent intent to evade tax. Cf. Rogers v. Commissioner, 111 Fed. (2d) 987, 989 (C.A. 6), affirming 38 B.T.A. 16; Anderson v. Commissioner, 250 Fed. (2d) 242, 250 (C.A. 5), affirming except as to computations not pertinent here memorandum decision of this Court; W. A. Shaw, 27 T.C. 561, 573, affirmed, 252 Fed. (2d) 681 (C.A. 6); Luerana Pigman, 31 T.C. 356. Our conclusion is, and we have found as a fact, that a part of the deficiencies for each of the years 1947 through 1950 was due to fraud with intent to evade tax. 2. The second issue relates to the addition to tax imposed by the respondent under Section 294(d)(2) of the Internal Revenue Code of 1939 for substantial underestimate of estimated tax for the years 1947 through 1950. Petitioner urges that where, as here, declarations of estimated tax were not filed, only the addition to tax provided in Section 294(d)(1)(A) for failure to file declarations may be imposed by the respondent. This Court has held to the *191 contrary. In E. Eugene King, 31 T.C. 108, at page 118, it was said: "A failure to file a declaration of estimated tax is equivalent to an estimate of zero, and the additions under sections 294(d)(1)(A) and 294(d)(2) may accordingly be applied simultaneously." See also Hansen v. Commissioner, 258 Fed. (2d) 585, 590-591 (C.A. 9), now pending in the Supreme Court on writ of certiorari; Nathan Bilsky, 31 T.C. 35, 45-46. 3. The third issue relates to amounts which respondent added to petitioner's income for 1947 and 1950 as gambling gains. Petitioner contends that these amounts did not represent income since his gambling losses in these years exceeded his gambling gains. The evidence is rather meager. It discloses that petitioner received checks for $287.70 in 1947 and $199 in 1950 which represented amounts he won in poker games. He testified that he was a poor poker player and that his losses from gambling in 1947 and 1950 exceeded his gains. His testimony was corroborated by Morton who participated in Friday night poker sessions with him. Although the evidence is fragmentary we are satisfied on the whole that petitioner's losses exceeded his gains *192 from gambling, and we decide this issue in favor of petitioner. 4. The remaining issue involves some payments for child support made by petitioner. In his returns for 1949 and 1950 he claimed deductions of $1,400 and $900 respectively for "Child support". The respondent disallowed the claimed deductions. In his petition, petitioner alleged that the respondent erred in disallowing the claimed deduction of $900 for child support for 1950. He alleged no error as to the disallowance of the deduction of $1,400 for child support claimed in his 1949 return. On brief he contends that an allowance for child support in the amount of $900.00 should have been allowed by the respondent for each of the years 1949 and 1950. Inasmuch as he alleged no error in his petition with respect to the disallowance of the deduction claimed for 1949, the correctness of respondent's determination with respect to this item is not at issue. This Court will not consider an issue raised for the first time in a brief filed after trial. Lynne Gregg, 18 T.C. 291, 303, affirmed per curiam, 203 Fed. (2d) 954 (C.A. 3); Estate of Ostella Carruth, 28 T.C. 871, 872. Petitioner was *193 ordered by a decree of the Superior Court of the County of Los Angeles, State of California, to pay $75 per month for the support of his minor daughter, and he made these payments during the year 1950. Although he claimed $900 as a deduction for child support in his return for 1950, it is not clear whether he is now contending that he is entitled to this amount as a deduction or as a statutory credit exemption for a dependent. No deduction for expenditures for child support as such is provided for in the Internal Revenue Code of 1939. It does provide that there be allowed as a credit against net income an exemption of $600 for a dependent. In order to be entitled to such a dependency credit for his daughter petitioner had the burden of proving that he contributed more than 50 per cent of the cost of supporting her during the year 1950. He has not met this burden. In the circumstances, we cannot find that the respondent erred in disallowing the deduction claimed by petitioner in his 1950 return for child support. Decision will be entered under Rule 50.