ROSE J. LINDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24517.  Promulgated October 4, 1951.

*Frank C. Scott, C. P. A.*, for the petitioner.
*R. G. Harless, Esq.*, for the respondent.

586

590

OPINION.

Hill, *Judge:* The first issue presents the question whether "items of gross income in respect of a decedent" taxable under section 126 (a) of the Code can properly be taxed to the petitioner in 1944 where such items as the respondent seeks to tax (set out in our findings of fact above), were received by decedent's estate in 1944 and currently distributed to the petitioner as sole legatee.

Section 126 (a) and the pertinent regulations thereunder read as follows:

SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

    (1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

        (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

        (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

        (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

Regulations 111, section 29.126–1:

Under section 126 (a) (1), all such amounts to which a decedent is entitled as gross income and which are not includible in computing his net income for his last taxable year or any prior taxable year shall be included, when received, in the gross income of the estate of the decedent or of the person receiving such

amounts if such amounts are received in a taxable year ending after December 31, 1942, by the estate of the decedent or by a person entitled to such amounts by bequest, devise, or inheritance from the decedent or by reason of the death of the decedent. These amounts are included in the income of the estate and such persons when received by them, regardless of whether or not they report income on the basis of cash receipts and disbursements.

Nowhere in the above-quoted sections of the Code and Regulations is provision made for taxing section 126 income to any person other than the rightful recipient, or to a distributee where an estate receives such income and currently distributes it.

Respondent apparently relied on the provisions of section 162 (c) as authority to tax section 126 income to petitioner. The applicability of section 162 [1] to a situation where section 126 income was received by an estate and currently distributed to a beneficiary was recently before this Court in the *Estate of Ralph R. Huesman*, 16 T. C. 656. In that case taxpayer-estate in its income tax return reported the receipt of section 126 income. The amount of such income was immediately distributed to the beneficiary under a testamentary trust set up in accordance with the provisions of the decedent's will. We held that the taxpayer-estate was not entitled to a section 162 deduction for the amount of section 126 income paid over to the beneficiary, since such section 126 income was not income of the estate but rather its corpus, a claim of the estate which collection reduced to cash, and the distribution of section 126 income was a distribution of corpus. Relying on that case we hold that petitioner is not taxable on any amounts of

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit ;

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year :

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

section 126 income which may have been received by the decedent's estate and distributed to her in 1944.

The second issue concerns the question whether the total proceeds received by the petitioner in 1945 in liquidation of the wine pools in which she held bequeathed interests constitute "income in respect of a decedent" taxable to her under section 126.

Since the administration of decedent's estate was terminated in 1944, petitioner as sole legatee acquired from the estate the right to receive any section 126 income payable. Accordingly, any such income received by her in 1945 is taxable to her in accordance with the provisions of section 126 (a) (1) (C) set out above. The only question remaining is whether such proceeds received by her in 1945 are items of gross income in respect of a decedent.

Respondent contends section 126 is applicable to those proceeds because they consisted of deferred purchase payments for grapes sold by the decedent to the associations during his lifetime. Evidence exists to support this contention. The marketing agreements contained language to the effect that the "member sells and the association purchases" wine grapes. Furthermore, the associations took legal title to, and otherwise exercised the rights of ownership over, the grapes delivered. We believe, however, that a consideration of the provisions of the marketing agreements as a whole, the manner in which the associations operated, and the purpose of the cooperative efforts indicates that the parties never intended a sale of grapes to take place.

Nowhere in the marketing agreements or elsewhere is there mentioned a sales price or a method to compute a sales price. There never existed any understanding that the associations were in any way bound to return to the members a price measured by the reasonable value of the grapes delivered. On the contrary, it was the clear understanding of the parties, in keeping with the very purpose for which the associations were organized, that the members were entitled only to any net proceeds realized on the sale of the wine products of the pools after the associations had deducted any processing, marketing and other expenses. The only logical explanation for the use of the terminology that the "member sells and the association buys" grapes is that these were terms conveying legal title to the associations while members at all times retained an equitable property interest in the grapes or the wine in the pools in proportion to the quantity of grapes they had delivered. Passage of legal title in this manner facilitated both the subsequent hypothecation of the pools and the marketing of the wine products.

In other cases where members delivered their commodities to cooperative marketing associations organized under chapter 4 of the

Agricultural Code of the State of California, and this same question arose as to the resulting relationship between the parties, the courts have held the relationship is one of trust. *California & Hawaiian Sugar Refining Corp. Ltd.* v. *Commissioner*, 163 F. 2d 531; *San Joaquin Valley Poultry Producers Association* v. *Commissioner*, 136 F. 2d 382; *Bogardus* v. *Santa Ana Walnut Growers Assn.*, 108 P. 2d 52.[2] Accordingly, we reject respondent's contention that the proceeds received by the petitioner from the associations consisted of deferred purchase payments for grapes which the decedent had sold to them.

We fail to perceive any other basis for determining that the 1945 wine pool payments constituted section 126 income. The facts show that the associations did not wait until all the wine products of any pool were sold before distributing the net proceeds. As sales were made, net proceeds were currently distributed to members. It follows that the wine pool payments received by the petitioner in 1945 were the net proceeds of current sales made in 1945 or in the latter part of 1944, after the date of decedent's death. Since such sales were not made during decedent's lifetime there could be no distributable proceeds due him when he died. Accordingly, no right to income from this source arose during the decedent's lifetime. We hold that the proceeds received by the petitioner in 1945 from the 1945 liquidation of the wine pools did not constitute items of gross income in respect of a decedent taxable to her in 1945 under section 126 of the Code. We make one exception, however, with respect to the proceeds received by petitioner in 1945 from the liquidation of a 1938 pool of the Lodi Winery in the amount of $2.64. Petitioner failed to introduce any evidence as to the nature of her interest in this wine pool, the re-

---

[2] In *California & Hawaiian Sugar Refining Corp. Ltd.* v. *Commissioner, supra,* the Circuit Court in reaching its conclusion as to the relationship in question stated:

It thus appears that under the California law the relationship created by the contract in the "passage of title, and the terms of purchase and sale,"—that is from the very beginning—is that of a trust, with the members as settlors creating a trust estate for themselves as beneficiaries.

The Court also quoted at length and with approval from *Bogardus* v. *Santa Ana Walnut Growers Assn., supra,* decided by the District Court of Appeal, Fourth District, California. This quotation included the following language:

It is respondent's contention, with which we agree, that at all times the relationship between the grower member and the local association, and between the local association, and the central association, was that of principal and agent, or beneficiary and trustee; that a fiduciary relationship existed which required at all times that these associations account to the grower member for all proceeds received from the sale of walnuts, and required the grower member to bear his proportionate share of all losses sustained in the marketing and sale of walnut products. [Cases cited] Both of these cases [cited] involve actions between a member of a non-profit cooperative marketing association and said association for an accounting, and for the determination of rights involving proceeds received from sales of marketed products. In each of these two cases marketing contracts had been entered into between the purchaser and association, which contracts provided for the immediate passage of title and were otherwise couched in terms of outright purchase and sale. In each of the cases cited the court held that the provisions for passage of title, and the terms of purchase and sale, were merely for convenience in marketing operations, and that the real relationship between the parties was one of trust, or of a fiduciary character. * * *

lationship between the decedent and the Lodi Winery, the manner in which that association operated or its non-profit status. Accordingly, we hold that the amount of the proceeds received by the petitioner in 1945 from the Lodi Winery is taxable to her in full as determined by the respondent.

Our decision that the wine pool payments are not taxable in full to the petitioner either in 1944 or 1945 necessitates a consideration of a third issue. Some of the wine pool payments received by the decedents' estate in 1944 and currently distributed to petitioner in that year and some of the wine pool payments received by the petitioner in 1945 exceeded the value of the petitioner's interests in the pools when she acquired them. This issue concerns the question whether any such excess amounts are taxable to the petitioner in 1944 and 1945 and, if so, are they taxable to her as ordinary income or as capital gains.

All of the wine pool interests bequeathed to the petitioner were interests in wholly or partially unliquidated wine pools with the exception of one, the 1942 pool of the East-Side Winery. The wine in this pool was sold and the net distributable proceeds computed in 1943. At the close of that year nothing remained to be done in the liquidation procedure except distribution of the unpaid portion of the net proceeds to the members. Such distribution took place in 1944. We conclude that the liquidation of this pool took place in 1943 during the lifetime of the decedent. Payment of proceeds from this pool made to the decedent's estate in 1944 was in the nature of payment of a claim held by the decedent against East-Side Winery and no part thereof was income of the estate in 1944. Accordingly, we hold that no part of this payment was distributive income of petitioner in 1944.

What the petitioner acquired under decedent's will were equitable property interests in the grapes, wine, brandy or whatever products went to make up the unliquidated pools and a right to the decedent's share of the net proceeds of any sales of these products. Since the petitioner acquired these interests by bequest, the proper basis of the determination of any subsequent gain or loss to her on the sale of the products of the pools was the fair market value of the interests when she acquired them.[3]

---

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

     *       *       *       *       *       *       *

    (5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition.  *  *  *  In the case of an election made by the executor under section 811 (j), the time of acquisition of the property shall, for the purpose of this paragraph, be the applicable valuation date of the property prescribed by such section in determining the value of the gross estate.  *  *  *

Our findings of fact show that petitioner realized gains with respect to some of the pools. Taxability of such gains as ordinary income or as capital gains depends upon determination of whether the petitioner's interests in the pools were capital assets. "Capital assets" are defined in the Code as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer;

We believe that petitioner's interests in the pools do not fall within the above exclusions. Petitioner did not become a member of the associations or a participator in their cooperative plans by virtue of her succession to the decedent's interest in particular wine pools. Her interests in these pools are unrelated to any membership which she may later have acquired in the associations. Accordingly, we hold that the petitioner's interests in the wine pools were capital assets. Cf., *Everett G. Maley*, 17 T.C. 260.

Taxability of the petitioner's gains on the sales of her capital assets as long term or short term capital gain depends on the length of the holding period.[4] Clearly, where liquidation of the pools took place in 1945, no question arises as to the holding period, and the 1945 gains are taxable as long term capital gains. Petitioner has failed, however, to introduce evidence as to when in 1944 the liquidation of the 1938 pools of the Cherokee Vineyard Association (the only liquidation in 1944 involving a gain) took place. For failure of proof to the contrary, we hold that 100 per cent of this gain, which we have found to be $132.13, is taxable to the petitioner in 1944 as a short term capital gain.

In its fiduciary return for the year 1944 decedent's estate reported the receipt of items of interest which were due the decedent on the date of his death. Since these items of interest had accrued on the date of

---

[4] Section 117 (b) reads as follows:

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

100 per centum if the capital asset has been held for not more than 6 months;

50 per centum if the capital asset has been held for more than 6 months.

decedent's death, they were reported on the estate tax return as assets of the estate. In the petition it was alleged that the estate was entitled to a deduction for estate tax paid on such items of interest. The decedent's estate is not before the Court. Accordingly, we hold that the issue is not properly raised in this proceeding.

*Decision will be entered under Rule 50.*