George W. and Mary Ann KECK, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Mary Ann KECK, Transferee of the Estate of Arthur D. Shaw, Deceased, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 18766, 18767.

United States Court of Appeals
Sixth Circuit.

Sept. 12, 1969.

Duane L. Isham, Akron, Ohio, for petitioners, Wise, Roetzel, Maxon, Kelly & Andress, S. C. Andress, Timothy G. Ireland, Akron, Ohio, on brief.

Stanley L. Ruby, Atty., Dept. of Justice, Washington, D. C., for appellee, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys,. Dept. of Justice, Washington, D. C., on brief.

Before PECK and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency in the income tax of George W. Keck and Mary Ann Keck, and also asserted transferee liability against Mary Ann Keck, as transferee of the assets of the Estate of Arthur D. Shaw, deceased. Mary Ann Keck, prior to her marriage to George W. Keck, was the widow of Mr. Shaw. The issue in the above captioned cases, which were consolidated for trial, is whether certain amounts received in 1960 by Mary Ann Keck, and

by the Estate, were taxable as income in respect of a decedent under the provisions of Section 691 of the Internal Revenue Code of 1954. The Tax Court decided that the amounts received by Mary Ann Keck and the Estate of Arthur D. Shaw were taxable under the provisions of the statute above mentioned, and assessed deficiencies in income, and transferee liability for income tax against Mary Ann Keck; and review of the Tax Court's decision is here sought by petitioners.

Arthur D. Shaw owned stock in three affiliated corporations as of March 1, 1956. On that date an agreement was entered into anticipating the sale of the assets of the corporation. A condition precedent to the sale was the approval of the Interstate Commerce Commission. Pending such approval and favorable ruling, the shares were placed in escrow.

On May 3, 1956, the attorneys for Mr. Shaw and other owners of the shares, requested a tax ruling relative to the application of Section 337 of the Internal Revenue Code of 1954 to the proposed sale; and, by letter dated July 15, 1956, the Internal Revenue Service ruled that Section 337 would be applicable. On May 25, 1956, application was made to the Interstate Commerce Commission for approval of the proposed sale.

Mr. Shaw, the owner of the shares in question, died November 27, 1958. On May 5, 1960, the Interstate Commerce Commission approval, above mentioned, was obtained.

On July 21, 1960, pursuant to the agreement to sell the assets of the three companies by the duly constituted directors and officers, acting on behalf of the stockholders, and pursuant to the authority granted by the Interstate Commerce Commission, the three companies were liquidated, and the cash received from the sale thereof was distributed in exchange for, and in cancellation of, stock of the shares of the three companies. The Executor of the Estate of Mr. Shaw paid over to Mrs. Keck, the widow of Mr. Shaw, as above mentioned, $314,328.53 in exchange for 100 shares of one of the companies liquidated, which was acquired by her in manner as follows:

On February 8, 1960, in order to obtain funds for payment of the federal estate tax, the First National Bank of Akron, as Executor of the Estate of Arthur D. Shaw, sold 48 shares in one of the companies to petitioner, Mary Ann Keck, for $150,877.68, and distributed to her, as distribution in kind, an additional 52 shares of stock in the same company. In order to pay the Estate of Arthur D. Shaw for the 48 shares purchased, as aforesaid, Mrs. Keck borrowed $150,000 from the Executor bank, pledging the entire 100 shares of the stock of the company in her possession as security for the loan. It was this money, plus $877.68, which was paid to the Executor as the full purchase price of the 48 shares purchased.

On or before December 4, 1961, the Executor of the Estate of Mr. Shaw transferred to Mrs. Keck, as distribution of such Estate, in accordance with the will of Arthur D. Shaw, property having a value in excess of $250,000. Upon such transfer and at all times subsequent thereto, the Shaw Estate has been without any assets.

On January 27, 1965, Mrs. Keck executed an instrument for a valuable consideration to the Commissioner of Internal Revenue, in which she admitted that she was the transferee of assets received from the transferor-executor, and agreed to pay any federal income taxes finally determined as due and payable by the transferor-executor for the taxable year ended December 31, 1960, to the extent of her liability as a transferee within the meaning of Section 6901 of the Internal Revenue Code of 1954.

Petitioners, including Mary Ann Keck, the aforesaid widow of Mr. Shaw, reported distribution of stock at the liquidation sale price, and also reported that price to be its acquisition base; and thus reported no taxable income.

The chief issue is whether the amounts received upon the liquidation of the three companies in question were "income in respect of a decedent" under Section 691 of the Internal Revenue Code of 1954, which provides:

"(1) General rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right."

Under the prior law, only the items which were accruable to a taxpayer at the time of his death were required to be included in the last return. This discriminated against accrual-basis taxpayers and allowed much income of cash-basis taxpayers to escape income tax. To correct this situation, Congress provided that in the case of both cash and accrual taxpayers, the last return must include all items accruable at death. The Supreme Court, in Helvering v. Enright, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 held that the term "accrual" in the statute was not to be construed narrowly in its accounting sense, but broadly to effectuate the purpose of the statute. However, such broad construction resulted in the bunching of income in the last return and its resultant taxation in higher surtax brackets.

It was to remedy this situation that Congress enacted the forerunner of Section 691, above quoted, which provides that such income as was formerly required to be included in the last return, because it was accrued though not actually received, is taxable to the recipient and has the same character in his hands that it would have had in the hands of the decedent.

What constitutes income in respect of a decedent is not spelled out in Section 691. However, Regulations Section 1.-691(a)–1(b) contains the following definition:

"(b) *General definition.* In general, the term 'income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent."

The Tax Court, by a majority of the members, held that the liquidating distributions received by Mr. Shaw's estate and by petitioner Mary Ann Keck in exchange for, and in cancellation of, the stock held by them are taxable as income in respect of a decedent within the meaning of Section 691 of the 1954 Internal Revenue Code, on the ground that all the significant economic activity in connection with the sale of the corporate assets had been accomplished prior to decedent's death in November 1958, and that, under these circumstances, it was immaterial that the actual consummation of the sale did not occur until after decedent's death.

Five judges of the Tax Court disagreed with the majority and, in the dissenting opinion written by Judge Featherston, declared that, in general, the term, "income in respect of a decedent" in Section 691 of the Internal Revenue Code of 1954 applied only to "those amounts to which a decedent was entitled as gross income, but which were not properly includible" in his final re-

turn,—according to the definition contained in Section 1.691(a)–1(b) of the Income Tax Regulations; that the transaction in question, with regard to the three corporations had not "reached the point at decedent's death where it properly can be said that the decedent's stock had been converted to 'property which constitutes an item of income in respect of a decedent under Section 691.'" As was further stated in Judge Featherston's dissenting opinion:

> "The proper test for determining whether gain from the sale of property is to be treated as income in respect of a decedent is the status of the transaction at decedent's death, not who carried on the 'economic activity' which brought it to that status. Thus, as Example (4) of the Regulations explains, where, pursuant to a contract made by "A" obligating his executor to sell his stock, a sale is made, 'there is no income in respect of a decedent with respect to the appreciation in value of A's stock to the date of his death' because 'the sale of stock is consummated after A's death.' However, if "A" had in fact sold his stock prior to his death, but payment was not received until after his death, any gain from the sale would be section 691 income. Section 1.691(a)–2 (b), Example (4)."

It was further pointed out by Judge Featherston that at the time of decedent's death, his stock had not been converted to an item of income "in respect of a decedent under section 691," because of the fact that the sale of the stock was subject to a number of contingencies; that it was, at that time, subject to the approval of the Interstate Commerce Commission, a condition precedent which was not met until eighteen months after decedent's death, and that such approval was neither routine or perfunctory; that, at the time of his death, neither the decedent nor the other stockholders were contractually committed to the plan to liquidate the corporation; that Owen O. Orr, the majority stockholder, for reasons of his own, might have decided not to liquidate the corporations, and that decedent's own stock was not committed to vote for the plan until May 23, 1960, when the proxies were signed and delivered.

In the prevailing opinion of the Tax Court, the case of Trust Company of Georgia v. Ross, 262 F.Supp. 900 (D.C. Ga.) was heavily relied upon, since the decision in the cited case was based on the "economic activities" test, and it was said:

> "Thus it is apparent that all the significant economic activity in connection with the sale of corporate assets had been accomplished prior to decedent's death in November 1958, and under these circumstances it is immaterial that the actual consummation of the sale did not occur until after decedent's death."

However, on appeal of the above case to the United States Court of Appeals for the Fifth Circuit, the "economic activities" test was rejected, the Court of Appeals stating:

> "Although it is pertinent to inquire whether the income received after death was attributable to activities and economic efforts of the decedent in his lifetime, these activities must give rise to a right to that income. And the right is to be distinguished from the activity which creates the right. Absent such a right, no matter how great the activities or efforts, there would be no taxable income under § 691." 392 F.2d 694, 695 (1967)

The Court then, quoting Regulation 1.691(a)–1(b), ruled that "income is to be included if decedent was entitled to the income at the date of his death. The entitlement test is in accord with the right to income test discussed, supra, and is more precise than the causal connection test used by the District Court." Trust Company of Georgia v. Ross, 392 F.2d 694, 696 (C.A.5) cert. denied 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 125, October 14, 1968.

■ We agree with the United States Court of Appeals for the Fifth Circuit

in holding that the right to income, under the provision of the statute here pertinent, is to be distinguished from the economic activities that create that right and that, absent such a right, no matter how great the activities, there is no taxable income under Section 691.

It is our conclusion that, at the date of his death, decedent Arthur D. Shaw possessed neither the right nor the power to require the corporations to liquidate and did not, prior to his death, possess the right to receive any proceeds from the contemplated liquidation. It follows that the amounts herein involved are not taxable under Section 691.

In accordance with the foregoing, there is no deficiency in income tax due from petitioner, or liability due from petitioner Mary Ann Keck, as transferee of the assets of the Estate of Arthur D. Shaw. Wherefore, the decision of the Tax Court is reversed and set aside, and judgment entered in favor of petitioners that there is no deficiency in income tax or liability with respect to Mary Ann Keck, as transferee of the assets of the Estate of Arthur D. Shaw.