Doris Simcoe CLAIBORNE, Successor Administratrix W/W/A of the Estate of Maude V. Simcoe, Deceased, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 78-3530.

United States Court of Appeals, Sixth Circuit.

Argued July 8, 1980.

Decided April 16, 1981.

Rehearing Denied June 8, 1981.

Albert Jones, U. S. Atty., Louisville, Ky., Dennis M. Donohoe, M. Carr Ferguson, Gilbert Andrews, Michael L. Paup, Daniel F. Ross, Helen A. Buckley, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

George A. Dietrich, Roetzel & Andress, Akron, Ohio, Woolsey M. Caye, Louisville, Ky., for plaintiff-appellee.

Before EDWARDS, Chief Judge, and MERRITT and MARTIN, Circuit Judges.

EDWARDS, Chief Judge.

The United States (Internal Revenue Service) appeals from a judgment entered in favor of plaintiff taxpayer allowing recovery of a refund of federal taxes which plaintiff had paid under protest. The United States contended before the District

Court, and contends before us, that the refund should be denied because the funds at issue were income in respect of a decedent, and hence taxable to the estate of the deceased Simcoe under § 691(a) of the Internal Revenue Code of 1954.

The facts in the case were stipulated before the District Judge who decided in favor of the administratrix. Our question is whether or not the stipulated facts showed that at the time of Simcoe's death she was entitled to the income from the sale of a piece of property.

Decedent Simcoe in 1967 was an elderly widow living on her farm in Jefferson County, Kentucky. The preceding year the Ford Motor Company had decided to purchase real estate for the site of a Ford heavy duty truck assembly plant in the vicinity of Louisville, and for that purpose had signed a contract with the Louisville and Nashville Railroad (L & N). A wholly-owned subsidiary of L & N (Houston-McCord Realty Company) began negotiations with landowners, including Simcoe, and entered into an option contract with Simcoe for the purchase of her property at $4,000 per acre. With the signing of the option contract, Simcoe received $6,000, which was described in the contract as being the total of liquidated damages the purchaser would be subject to pay in the event the option was not picked up or the contract for sale was not consummated.

Four events happened thereafter: Simcoe appointed her son, Newton Simcoe, as her personal representative and gave him power of attorney to act on her behalf. Thereafter on August 12, 1967, Houston-McCord exercised its option rights on the Simcoe property. On August 15, Newton Simcoe entered into an agreement with Houston-McCord giving them immediate possession of the property at issue. In early September, Ford actually entered upon the Simcoe farm and began clearing and site preparation work for the construction of an access road.

Maude Simcoe died October 1, 1967, before the closing of the sale and before anything had been paid except the $6,000 previously referred to.

The applicable statute does not in its specific language appear to shed much light upon the issue which is currently before us:

### § 691. Recipients of income in respect of decedents

#### (a) Inclusion in gross income.—

(1) General rule.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; . . . .

The history of this particular provision has been previously considered by this court in *Keck v. Commissioner*, 415 F.2d 531, 533 (6th Cir. 1969), as follows:

Under the prior law, only the items which were accruable to a taxpayer at the time of his death were required to be included in the last return. This discriminated against accrual-basis taxpayers and allowed much income of cash-basis taxpayers to escape income tax. To correct this situation, Congress provided that in the case of both cash and accrual taxpayers, the last return must include all items accruable at death. The Supreme Court, in *Helvering v. Enright*, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 held that the term "accrual" in the statute was not to be construed narrowly in its accounting sense, but broadly to effectuate the purpose of the statute. However, such broad construction resulted in the bunching of income in the last return and its resultant taxation in higher surtax brackets.

It was to remedy this situation that Congress enacted the forerunner of Sec-

tion 691, above quoted, which provides that such income as was formerly required to be included in the last return, because it was accrued though not actually received, is taxable to the recipient and has the same character in his hands that it would have had in the hands of the decedent.

The Treasury Regulation adopted to elucidate § 691 adds at least something to the construction of the statute in applicable part as follows:

(b) *General definition.* In general, the term "income in respect of a decedent" refers to those amounts *to which a decedent was entitled as gross income* but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent. See the regulations under section 451. Thus, the term includes—

(1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method;

(2) Income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of an accrual method of accounting; and

(3) Income to which the decedent had a contingent claim at the time of his death.

Treas.Reg. § 1.691(a)–1(b) (1965).

■ The legal arguments which have followed the enactment of this statute and the regulation just quoted have divided approximately as follows: The taxpayers have contended that entitlement meant an immediate and legally enforceable right to payment as of the date of death. The IRS, on the contrary, has taken the point of view that where the income was produced by the activities of the decedent prior to death, it was income "in respect of a decedent" within the meaning of the statute, regardless of whether or not the decedent could on the date of death have enforced payment through legal process. The District Judge who heard this case reasoned as follows:

The terms of the contract concerning liquidated damages are plain and unambiguous. They are such that they can only reasonably be construed to be a limitation of the rights of the parties, and not security for the performance of the contract. The terms specifically refer to the consideration as liquidated damages. True it is that the Court must look at the entire agreement. If it is clear that the intention of the parties was to limit their rights, the Court must give that interpretation to the contract. The Court must also look at the surrounding circumstances.

Here, Houston-McCord was not negotiating for itself but for Ford. Had Ford, for whatever reason, changed its plans, Houston-McCord cannot be found to have intended to purchase the property for itself. Thus, the liquidated damages provision must be interpreted as just that. *See* 71 Am.Jur.2d, *Specific Performance,* Section 58.

Defendant further urges that Ford, by taking possession of Mrs. Simcoe's property in August, indicated that the contract would be performed by Houston-McCord and that both Ford and Houston-McCord treated the transaction as having been consummated except for the formal signing of the deed. Whether or not this position has merit, it is agreed that Ford entered the property pursuant to authority granted by Newton Simcoe under the power of attorney referred to above. The reading of that power of attorney raises serious doubt as to the validity of Newton Simcoe's acts. The Court finds no special significance in Houston-McCord's and Ford's activities.

In sum, the Court finds that, at the date of her death, Mrs. Simcoe was not entitled to the amounts yet unpaid by Houston-McCord and that, therefore, the amounts ultimately paid were not income in respect of a decedent as that term is used in Section 691. Since there was no right, there was no taxable income. *Keck v. Commissioner of Internal Revenue,* 415 F.2d 531 (6th Cir. 1969).

We observe that our examination of the power of attorney Mrs. Simcoe gave her son does not raise in this court's mind such serious doubts as to the validity of Newton Simcoe's actions as the District Judge found therein. We recognize, of course, that the broad power granted in the first sentence was limited by Mrs. Simcoe by the phrase "under such terms or conditions as I may deem proper." Nothing in this record, however, suggests that Mrs. Simcoe disagreed with her son's grant of authority to the Ford Motor Company to enter upon her land and begin site preparation, and the second paragraph of the power of attorney seems to us to resolve any question of Newton Simcoe's authority.

At that point where the Ford Motor Company began the work of site preparation, Houston-McCord had already exercised its option to purchase this property. In addition, the purchasing parties (Ford, L & N and Houston-McCord) had had Mrs. Simcoe's property rezoned to industrial use and had secured a building permit for it.

Furthermore, Houston-McCord had agreed with Mrs. Simcoe to purchase a farm and some income-producing property which would be accepted by her as part of the purchase price. These negotiations were far advanced at the time of Mrs. Simcoe's death and were completed shortly thereafter. The closing of the purchase of Mrs. Simcoe's farm (with the exchange of properties referred to above and payment of $690,258.86 in cash) took place just 16 days after Mrs. Simcoe's death.

Assuming that the test for taxability of the current disputed income is the enforceability of Mrs. Simcoe's right to the full purchase price as of the date of her death, we find it impossible to agree that no such enforcement rights existed. While as a strict matter of law Mrs. Simcoe would not be "entitled" to the purchase price until after the closing, we believe that Ford's entry upon the land after Houston-McCord had exercised its option would have occasioned the success of a suit by Mrs. Simcoe for specific performance if at that advanced point in the transaction the Ford Motor Company had for some reason refused to complete the purchase. As we construe the term "entitlement," it includes both legal and equitable rights.

Kentucky, of course, recognizes an action for specific performance. *Simmerman v. Fort Hartford Coal Co.*, 310 Ky. 572, 221 S.W.2d 442 (1949); *Hogg v. Forsythe*, 198 Ky. 462, 248 S.W. 1008 (1923); *Walton's Ex'r v. Franks*, 191 Ky. 32, 228 S.W. 1025 (1921). *See also* 17 Ky. Digest, *Specific Performance* (1953).

Under the factual posture of this case, at the moment of decedent's death, we believe that there was entitlement in Mrs. Simcoe to the specific performance of the purchase agreement on tender of a deed.

We also believe where, by agreement, Ford Motor Company had taken possession of Mrs. Simcoe's land and had begun reshaping it, Ford's agent would be regarded by the Kentucky courts as having so exercised its contract rights as to be liable for full payment of the contract price. *See Milby v. Martin*, 280 S.W.2d 196 (Ky.1955).

In leading, if now somewhat elderly, cases, the optionor's right to specific performance of a land purchase agreement at full purchase price, rather than liquidated damages, has been recognized where (as here) the optionee has taken full possession of the realty which is the subject of the contract. *Milby v. Martin*, 280 S.W.2d 196 (Ky.1955); *Brown v. Norcross*, 59 N.J.Eq. 427, 45 A. 605 (Ch.1900). In this last case the court said:

> If the contract should be held to tender a choice to accept performance, or to refuse and pay the liquidated sum, the defendant long ago has exercised his election, and has chosen to accept performance. He has paid a part of the purchase money, accepted delivery of possession, which he yet retains, and has declared his willingness fully to perform if his construction of the amount yet due be made the basis of settlement. Under these circumstances, having already elected, and still retaining the benefits of his choice, he cannot, without even offering to re-

store those benefits, now choose again, and take the other alternative.

*Brown v. Norcross, supra,* 45 A. at 607.

The leading case in this Circuit upon interpretation of § 691 of the Revenue Act of 1954 is *Keck v. Commissioner,* 415 F.2d 531 (6th Cir. 1969). *Keck* relied in part on *Trust Co. of Georgia v. Ross,* 392 F.2d 694 (5th Cir. 1967), *cert. denied,* 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968). In *Keck* we said:

> We agree with the United States Court of Appeals for the Fifth Circuit in holding that the right to income, under the provision of the statute here pertinent, is to be distinguished from the economic activities that create that right and that, absent such a right, no matter how great the activities, there is no taxable income under Section 691.
>
> It is our conclusion that, at the date of his death, decedent Arthur D. Shaw possessed neither the right nor the power to require the corporations to liquidate and did not, prior to his death, possess the right to receive any proceeds from the contemplated liquidation. It follows that the amounts herein involved are not taxable under Section 691.

*Keck v. Commissioner, supra* at 534–35.

In *Keck* the transaction involved required the approval of the Interstate Commerce Commission before there could be any consummation of the sales of the shares concerned. Such approval was not received until a year and a half after the death of the owner of the shares concerned. Neither in law nor in equity could the owner of the shares have enforced the purchase agreement there involved.

We recognize that the United States in this appeal argues for an "economic activities" test which would exclude any consideration of enforceability as an aspect of entitlement.[1] To this degree the government appears to be asking for an overruling of the *Keck* opinion. Since we believe that for the reasons outlined above the factual situation in this case is sufficiently distin-

guishable from the facts in *Keck* to warrant a different result, we decline the suggestion which we believe is strongly implied in the government's brief that we now overrule the legal conclusion in *Keck.*

 For the reasons set forth above, we hold that decedent was entitled to the completion of this transaction and the payment of the funds as of the time of her death. The basic thrust of the Congressional purpose appears to us to be to include in income accounted for under § 691 all income where economic activities had progressed to the point of either legal or equitable entitlement.

The judgment of the District Court is therefore vacated and this case is remanded to the District Court for further proceedings in accordance with this opinion.

---

1. *See O'Daniel's Estate v. Commissioner,* 173 F.2d 966 (2d Cir. 1949); *Commissioner v.* *Linde,* 213 F.2d 1 (9th Cir.), *cert. denied,* 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (1954).