ESTATE OF HENRY C. BICKMEYER, VIOLA BICKMEYER AND FRANCIS B. FROEHLICH, EXECUTORS, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16039–80.    Filed February 6, 1985.

*William E. deBruin, Jr.,* for the petitioner.
*Peter Devlin,* for the respondent.

OPINION

FEATHERSTON, *Judge*: Respondent determined deficiencies in the amounts of $58,276 and $43,300 in petitioner's Federal income tax for the fiscal years ended October 31, 1974, and October 31, 1976, respectively. Other issues having been settled by the parties, the only issue remaining for decision is whether liquidating distributions received by petitioner, the Estate of Henry C. Bickmeyer, deceased, from Hempstead Bus

Corp. and H.B. Land Corp. in the fiscal years ended October 31, 1974, and October 31, 1976, constituted income in respect of a decedent within the meaning of section 691(a)(1).[1]

All the facts are stipulated.

Henry C. Bickmeyer (sometimes hereinafter decedent) died on November 15, 1973. Viola Bickmeyer and Francis B. Froehlich were appointed and qualified as coexecutors of his will by order of the Surrogate's Court of Nassau County, New York. When the petition was filed, the legal residence of Viola Bickmeyer was Fort Lauderdale, Florida, and that of Francis B. Froehlich was Brookville, New York. Decedent's estate (petitioner) filed its fiduciary income tax returns using a fiscal year ending October 31.

At the time of his death, decedent owned 489 of the 490 outstanding shares of Hempstead Bus Corp. (Bus) and 2,500 of the 10,000 outstanding shares of H.B. Land Corp. (Land). On the date of his death, decedent had a basis for his stock in Bus of $71,847 and a basis of $0 for his stock in Land.

## 1. Condemnation of Assets of Bus and Land

For a period prior to June 3, 1973, Bus operated bus lines in Nassau County, and Land owned a bus garage and maintenance facility which it had leased to Bus. On March 30, 1973, Nassau County initiated a condemnation proceeding in the local Supreme Court for the acquisition of all of the assets of Bus and Land. In its petition in the condemnation proceeding, the county alleged that the assets of Bus and Land had fair market values of $588,340 and $584,350, respectively, and, as consideration for the acquisition of their assets, the county offered to pay the corporations those amounts. Land and Bus answered the petition, denying the accuracy of the alleged values and claiming just compensation for their assets based on appraisals showing values of $1,074,933 and $1,308,000, respectively, for the assets of Bus and Land.

On June 1, 1973, the court granted the county's application to condemn the properties and placed the issue as to the fair market values thereof on a special calendar of the court. Nassau County acquired and took possession of all of the assets

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted.

of Bus and Land on June 2, 1973. In accordance with New York law, Nassau County, in July 1973, paid Bus $588,340 and Land $584,350 as the appraised value of their assets.

Litigation ensued as to whether the remaining dispute concerning the fair market value of the properties should be resolved under the Nassau County Administrative Code or the New York Condemnation Law. The matter was finally resolved by a decision of the Appellate Division, Second Department, on May 6, 1974, that the case should be tried under the Nassau County Administrative Code without application of the New York Condemnation Law.

Thereafter, on March 23, 1976, the case was settled by agreement; total asset values, agreed upon, including the amounts paid in July 1973, were $958,780 for Land and $713,340 for Bus. On July 14, 1976, the balances of the condemnation awards were paid to the trustees in dissolution, $374,430 for Land and $125,000 for Bus. The trustees paid petitioner its proportionate shares.

## 2. Liquidation and Dissolution of Bus and Land

On May 30, 1973, Bus and Land formally voted to dissolve and liquidate under section 337. Of the condemnation proceeds paid to Bus in July 1973, the sum of $15,503 was distributed to decedent in July 1973 as a partial liquidating distribution. Of the condemnation proceeds paid to Land in July 1973, $75,000 was distributed to decedent as owner of 2,500 shares, and $60,000 was distributed to his wife, Viola Bickmeyer, as owner of 2,000 shares in the corporation. On the joint Federal income tax return filed on behalf of decedent and Viola Bickmeyer for 1973, these distributions were reported as long-term capital gains, computed by using the bases referred to above, and are not here in dispute.

Of the condemnation proceeds paid to Bus and Land in July 1973, Bus distributed $286,935 and Land distributed $33,996 to decedent's estate during the estate's fiscal year ended October 31, 1974.

Bus and Land on May 24, 1974, and May 29, 1974, respectively, distributed all of their remaining assets to the trustees in dissolution of the respective corporations. Among the assets distributed were the claims against Nassau County for additional condemnation awards. On the same respective dates,

certificates of dissolution were filed with New York State for the two corporations.

### 3. Tax Treatment of Receipts From Bus and Land

On their 1973 tax returns, Bus and Land reported their gains from the condemnation of their assets as nontaxable pursuant to section 337.

In the estate tax return (Form 706) for decedent's estate, the estate valued decedent's interest in Bus at $256,700 and in Land at $38,950. Upon audit, the estate tax examiner increased the value of decedent's interest in Bus to $385,096 and in Land of $135,101 based on the condemnation awards, including accrued interest. The estate concurred in the increase for estate tax purposes.

On its fiduciary income tax return for the fiscal year ended October 31, 1974, decedent's estate did not report any capital gain or loss in respect of the distributions received from Land and Bus. On its fiduciary income tax return for the fiscal year ended October 31, 1976, the estate reported a long-term capital gain of $27,836 with respect to Bus and a long-term capital loss of $26,979 with respect to Land.

In so reporting the transactions, petitioner claimed, and here contends, that its bases for the Bus and Land stocks were increased under section 1014(a) to amounts equal to the values of the stocks at the date of decedent's death (i.e., the agreed values per the estate tax audit). Accordingly, the estate treated the liquidating distributions from the two corporations in 1974 and most of the liquidating distributions in 1976 as returns of capital.

In the notice of deficiency, respondent determined that decedent's estate realized capital gains income of $124,542 in fiscal year ended October 31, 1974, and $96,049 in fiscal year ended October 31, 1976, as a result of the liquidating distributions from Bus and Land. In making this determination, respondent asserted that the liquidating distributions constituted income in respect of a decedent under section 691 and that section 1014 did not, therefore, provide a step up in petitioner's basis for the Bus and Land stock interests held by decedent at his death.[2]

---

[2]Ancillary to respondent's determination under sec. 691 is the further determination that the estate is subject to a minimum tax under sec. 56 in respect of the tax preference items arising from

## 4. Tax Consequences of the Distributions

Section 1014(a)[3] provides generally, with certain stated exceptions, that the basis of property in the hands of a person acquiring the property from a decedent will be its fair market value at the date of decedent's death. Petitioner relies upon this general provision to support its contention that its bases for decedent's Bus and Land stock rights were stepped up to the amounts of their respective fair market values at decedent's death, as agreed by the parties for estate tax purposes. Section 1014(c), one of the exceptions to section 1014(a), provides, however, that section 1014 shall not apply to "property which constitutes a right to receive an item of income in respect of a decedent under section 691." The controlling issue here is thus whether petitioner's gains from the liquidation of Bus and Land were income in respect of a decedent.

Section 691(a)(1)(A) provides, in pertinent part, as follows:

SEC. 691(a). INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

---

the capital gains adjustment for the Bus and Land stock. The parties have stipulated that the determination of this Court with respect to the sec. 691 issue will dispose of this ancillary adjustment, and it will not be further discussed.

[3]SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) IN GENERAL.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.

\*    \*    \*    \*    \*    \*    \*

(c) PROPERTY REPRESENTING INCOME IN RESPECT OF A DECEDENT.—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691.

This statutory language is amplified by section 1.691(a)–1(b), Income Tax Regs., which is as follows:

(b) *General definition.* In general, the term "income in respect of a decedent" refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death * * *

The crucial language for our purposes is "the right to receive" gross income, as used in section 691(a)(1)(A), and "those amounts to which a decedent was entitled," as used in the regulation. Under this language, the courts have found a congressional intent to tax all items which can be considered gross income and to insure that the tax upon income that would have been derived had the decedent lived should not be lost as a consequence of his death. *Commissioner v. Linde*, 213 F.2d 1, 4, 5–6 (9th Cir. 1954), remanding 17 T.C. 584 (1951); *Estate of Sidles v. Commissioner*, 65 T.C. 873, 879–880 (1976), affd. without published opinion 553 F.2d 102 (8th Cir. 1977). For gains to be considered "income in respect of a decedent," however, section 691 requires that the decedent possess a right to that income as of the date of his death. *Trust Co. of Georgia v. Ross*, 392 F.2d 694, 695–696 (5th Cir. 1967); *Claiborne v. United States*, 648 F.2d 448, 452 (6th Cir. 1981). As stated in *Estate of Sidles v. Commissioner*, 65 T.C. at 880, in the case of a corporate liquidation:

Our point of inquiry must be whether the transaction had sufficiently matured as of decedent's death so as to create in him a right to receive the income when it was subsequently realized.

See also *Claiborne v. United States, supra* at 452; *Rollert Residuary Trust v. Commissioner*, 752 F.2d 1128 (6th Cir. 1985), affg. 80 T.C. 619 (1983). Whether a decedent possesses such a right is a question of fact, and each case depends upon its "subsisting facts." *Trust Co. of Georgia v. Ross*, 392 F.2d at 695.[4]

---

[4]The legislative history of sec. 691 was succinctly stated in *Keck v. Commissioner*, 415 F.2d 531, 533 (6th Cir. 1969), revg. 49 T.C. 313 (1968), as follows:

"Under the prior law, only the items which were accruable to a taxpayer at the time of his death were required to be included in the last return. This discriminated against accrual-basis taxpayers and allowed much income of cash-basis taxpayers to escape income tax. To correct this situation, Congress provided that in the case of both cash and accrual taxpayers, the last return must include all items accruable at death. The Supreme Court, in Helvering v. Enright, 312 U.S. 636, 61 S.Ct.

We think it is clear that the liquidation of Bus and Land had progressed as of November 15, 1973, the date of decedent's death, to the point where decedent was entitled to, and had a right to receive, the liquidation proceeds. As detailed above, in March 1973, Nassau County initiated a condemnation proceeding in the local Supreme Court for the acquisition of all the assets of Bus and Land. In June 1973, Nassau County had taken title by eminent domain to all of the assets of Bus and Land, and had taken possession of all of their assets; the Nassau County Supreme Court had placed the corporations' claims for additional compensation for the assets on a special calendar for disposition. In July 1973, the county had paid the corporations the amounts of the county's appraisals. As early as May 30, 1973, the directors and shareholders of both Bus and Land had adopted resolutions to dissolve, to liquidate the corporations' assets, and to distribute the proceeds within 1 year. Both Bus and Land had made partial liquidating distributions to their shareholders, including decedent, consisting of a substantial amount of the cash proceeds of the condemnation. All of these steps were taken prior to decedent's death.

As a shareholder of the two corporations, decedent was required to do nothing further in order to receive his full share of the corporate proceeds. As of the date of his death, all that remained to be done under the respective plans of complete liquidation was to distribute the remainder of the corporate assets and to execute and file the certificates of dissolution with the State. Although the corporations were involved in litigation with Nassau County concerning the proper amounts of the condemnation awards at the time of decedent's death, decedent was not required as a shareholder to participate in that litigation in order to be entitled to his full share of the

---

777, 85 L.Ed. 1093 held that the term "accrual" in the statute was not to be construed narrowly in its accounting sense, but broadly to effectuate the purpose of the statute. However, such broad construction resulted in the bunching of income in the last return and its resultant taxation in higher surtax brackets.

"It was to remedy this situation that Congress enacted the forerunner of Section 691, * * * which provides that such income as was formerly required to be included in the last return, because it was accrued [in the broad sense] though not actually received, is taxable to the recipient and has the same character in his hands that it would have had in the hands of the decedent."

See also *O'Daniel's Estate v. Commissioner,* 173 F.2d 966, 967–968 (2d Cir. 1949), affg. 10 T.C. 631 (1948); *Estate of Sidles v. Commissioner,* 65 T.C. 873, 878–879 (1976), affd. without published opinion 533 F.2d 102 (8th Cir. 1977); H. Rept. 2333, 77th Cong., 2d Sess. 84 (1942), 1942–2 C.B. 372; S. Rept. 1631, 77th Cong., 2d Sess. 101 (1942), 1942–2 C.B. 504.

proceeds, whatever the amount turned out to be.[5] He already had that right. Under the terms of the liquidation plans adopted by the corporations, the claims against Nassau County could be distributed to the trustees in dissolution along with all other assets, and this was in fact done in late May 1974. Only ministerial acts remained to be accomplished. Thus, at his death in November 1973, decedent had a "right to receive" the liquidation proceeds within the meaning of section 691(a)(1)(A). The liquidation gains when received were, therefore, income in respect of a decedent.

The case is analogous to *Estate of Sidles v. Commissioner*, 65 T.C. 873 (1976), affd. without opinion 553 F.2d 102 (8th Cir. 1977). In that case, Sidles was the sole shareholder of a corporation. Prior to his death, the corporation adopted a plan of complete liquidation and sold its principal asset. As of the date of Sidles' death, all that remained to be done was to adopt a corporate resolution to distribute, to distribute the assets, subject to liabilities, and to file the articles of dissolution with the State. This Court, holding that Sidles had a right to receive the liquidation proceeds at his death, and thus the liquidating gains received by the estate constituted income in respect of a decedent, stated (65 T.C. at 881):

> The liquidating distribution had its source exclusively in decedent's actions. His affirmative vote for liquidation created a right to receive that distribution, which right existed at his death. Although decedent had the power to rescind the transaction creating such a right, he had not attempted to do so before his death. Had the decedent lived to receive the liquidating distribution, it would have constituted income to him, and consequently such amounts constitute income in respect of a decedent when received by the estate.
>
> There can be no doubt that the estate acquired the right to receive the liquidation distribution from the decedent. The estate's right to such proceeds derived solely from decedent's death and not from its own efforts. Whatever actions the estate took were of no material significance here.
>
> Furthermore, the actions of Bi-State's board of directors which remained to be done at the time of decedent's death do not derogate decedent's right to receive the liquidating distribution. The resolution of November 29, 1968, to distribute the assets in liquidation to decedent's estate, the declaration of the

---

[5]Sec. 691 does not require that the amount to which the decedent is entitled be ascertainable at his death. *O'Daniel's Estate v. Commissioner*, 173 F.2d 966, 968 (2d Cir. 1949), affg. 10 T.C. 631 (1948); *Commissioner v. Linde*, 213 F.2d 1, 7 (9th Cir. 1954), remanding 17 T.C. 584 (1951); *Estate of Sidles v. Commissioner*, 65 T.C. 873, 894 (1976), affd. without published opinion 553 F.2d 102 (8th Cir. 1977).

liquidating dividend and the filing of articles of dissolution were mere formalities; ministerial acts necessary to complete the liquidation under State law. On the date of his death the decedent had performed enough substantive acts within his control to perfect his right to receive the liquidating distribution for purposes of section 691. Cf. *Hudspeth v. United States*, 471 F.2d 275 (8th Cir. 1972); *Kinsey v. Commissioner*, 477 F.2d 1058 (2d Cir. 1973), affg. 58 T.C. 259 (1972). [Fn. ref. omitted.]

This case is clearly distinguishable from *Keck v. Commissioner*, 415 F.2d 531 (6th Cir. 1969), revg. 49 T.C. 313 (1968), relied on by petitioners. In that case, Arthur D. Shaw (Shaw) owned stock in three companies which agreed, subject to Interstate Commerce Commission (ICC) approval, on March 1, 1956, to sell their assets. Shaw died on November 27, 1958. ICC approved the sale on May 5, 1960. The corporations were then liquidated and dissolved, and the proceeds were distributed to Shaw's estate. The Court of Appeals rejected the Commissioner's contention that the gains included in the proceeds were income in respect of a decedent on the ground that a number of contingencies operated to prevent Shaw's stock rights from maturing into a right to receive the sale proceeds: (1) The sale was subject to ICC approval; (2) as of the time of decedent's death, neither decedent nor the other stockholders were contractually committed to the plan to liquidate the corporations; (3) the majority stockholder (not Shaw) might have decided not to liquidate the corporation; and (4) decedent's own stock was not committed to vote for the liquidation plan until after his death. Because of these contingencies, the court found that the transaction had not sufficiently matured, as of the date of Shaw's death, to create in Shaw a right to receive the income when it was subsequently realized.

In the instant case, no comparable contingencies existed at decedent's death. As we have discussed, Nassau County had already taken by eminent domain all of the assets of Bus and Land. At decedent's death, the shareholders of Bus and Land had committed themselves to liquidate the corporations, and the corporations had already distributed some of the cash received for the assets. *Keck* is, therefore, inapposite.

Theoretically, petitioner as sole shareholder (except for one share) of Bus could have reversed the decision to liquidate Bus prior to his death, but it is stipulated that "No action was ever taken by any of the shareholders of either Bus or Land to revoke the liquidation and/or dissolution of the said corpora-

tions." Moreover, Bus's assets had been taken by Nassau County and part of its liquidation proceeds had been distributed prior to his death. While abandonment of Bus's impending dissolution may have been technically or theoretically possible, "the realities and substance of the events must govern our determination, rather than formalities and remote hypothetical possibilities." *Hudspeth v. United States*, 471 F.2d 275, 277 '8th Cir. 1972); *Estate of Sidles v. Commissioner*, 65 T.C. at 880 ı. 4.

To reflect the foregoing,

*Decision will be entered for the respondent.*

